UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISHAWN JOHNSON and GAVIN BRANDT, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br>-v-<br>THOMSON REUTERS d/b/a FINDLAW,<br><br>Defendant. | Court File No._____<br><br><br>**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND** |

This is a Collective Action Complaint brought to obtain monetary relief pursuant to the Fair Labor Standards Act ("FLSA") on behalf of a class of individuals who are or were employed by Defendant as FindLaw Account Managers (collectively, "Account Managers"). Account Managers provide customer service and support to Defendant's FindLaw sales staff and their customers. Defendant imposes onerous production quotas on Account Managers that require them to work more than 40 hours a week to meet. Until January 3, 2018, Defendant misclassified its Account Managers as exempt from the FLSA. Because of the misclassification, Defendant did not pay overtime premium wages to Account Managers who worked more than 40 hours in a workweek. Plaintiffs Chrishawn Johnson and Gavin Brandt are two such Account Managers to whom Defendant denied overtime pay; they

bring this lawsuit on behalf of all similarly situated Account Managers to recover actual and liquidated damages as mandated by the FLSA.

Plaintiffs, for their Complaint against Defendant, state and allege as follows:

## Parties, Jurisdiction, and Venue

1. Plaintiff Chrishawn Johnson has worked as an Account Manager since November 30, 2015. He regularly worked more than 40 hours each workweek since starting the job. Mr. Johnson performed the majority of his work for Defendant from his home in Minneapolis, Minnesota.

2. Plaintiff Gavin Brandt has worked as an Account Manager since November 30, 2015. He regularly worked more than 40 hours each workweek since starting the job. Mr. Brandt performed the majority of his work for Defendant from his home in Minneapolis, Minnesota.

3. Defendant is a Delaware corporation that operates a law firm marketing service under the assumed name of FindLaw. According to the Minnesota Secretary of State's records, FindLaw's principal place of business address is 610 Opperman Drive, Eagan, Minnesota. FindLaw operates a free legal information website with an online lawyer directory and sells law firm marketing solutions such as website, online video, online attorney profiles, search engine marketing, and Internet advertising.

4. At all times relevant to this Complaint, Plaintiffs and Defendant were "employee" and "employer" respectively, within the meaning of FLSA.

5. The acts alleged in this Complaint fall within the general subject matter of this Court.

6. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1331 because the case arises under a federal law, the FLSA.

7. Venue is proper in this District under 28 U.S.C. 1391(a) and (b). Defendant is a resident of this District and subject to personal jurisdiction here.

## Facts

8. Defendants employ approximately 80-90 account managers throughout the United States.

9. The primary job duties of Account Managers have been substantially the same since at least November 2015.

10. The "key responsibilities" of Account Managers are to:

   a. "Ensure client retention and satisfaction;"

   b. "Retain assigned client base and the associated FindLaw revenue by providing first class customer care for all clients;"

   c. "Provide timely and proactive status updates to clients/stakeholders for all projects in process;"

   d. "Identify and provide up-sell and cross sell lead opportunities to field partners;"

   e. "Secure contract renewals for assigned portfolio of customers;"

3

  f. "Ownership for properly documenting exceptions, moving them through the process and closing out with appropriate parties."

https://jobs.thomsonreuters.com/ShowJob/Id/76778/Solutions-Account-Manager/.

11. As compensation for their work, Defendants paid Account Managers a base salary, non-discretionary incentive compensation, participation in an employee incentive plan, and provided fringe benefits.

12. Until January 3, 2018, Defendant classified all Account Managers as exempt from the FLSA and did not pay overtime wages to them.

13. On January 3, 2018, Defendant reclassified all Account Managers as non-exempt from the FLSA and informed them that they were not allowed to work more than 40 hours per week without prior approval from their manager.

14. The result of Defendant's payroll and timekeeping policies is that Defendant deprives Plaintiff and other CNAs of premium pay for their overtime work.

## Collective Action Allegations

15. Plaintiff brings this Complaint as a collective action, alleging violations of the FLSA on behalf of herself and all similarly situated individuals. This "Federal Collective Group" is defined as:

> All individuals who worked for Defendant as a full-time FindLaw Account Manager at any of its locations at any time during the three years preceding the filing of this Collective Action Complaint.

4

Plaintiffs reserve the right to redefine the Federal Collective Group prior to conditional certification.

16. Plaintiffs and other Account Managers are similarly situated in that they have substantially similar job requirements, pay provisions, time clock and payroll system, and were subject to Defendant's common practice, policy, or plan of not paying overtime premium wages for work performed in excess of 40 hours per week until January 3, 2018.

17. Defendant permitted Plaintiffs and members of the Federal Collective Group to work more than 40 hours per week without payment of full overtime compensation from time to time.

18. Defendant failed to properly compensate Plaintiff for all time worked.

19. Count One of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the claims of the Plaintiff are similar to the claims of current and former Account Managers who worked for Defendant.

20. Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.

21. The precise number of members of the proposed Federal Collective Group is unknown to Plaintiffs at this time. However, upon information and belief, it is

approximately 80-90 individuals. The true number of proposed Federal Collective Group members is, however, likely to be known by Defendant, and thus, Federal Collective Group members may be notified of the pendency of this action by first class mail or electronic notice using information in Defendant's payroll records.

## Cause of Action

### Count One
### FAILURE TO PAY OVERTIME
### TO THE FEDERAL COLLECTIVE GROUP
FLSA, 29 U.S.C. §§ 201 *et seq.*
On behalf of the named Plaintiffs and the Federal Collective Group

22. Plaintiffs re-allege and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

23. Section 206(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

24. For purposes of the FLSA, the employment practices of Defendant were and are uniform in all respects material to the claims asserted in this Complaint throughout Minnesota.

25. Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive full overtime pay for all overtime worked.

26. At all relevant times, Defendant had gross operating revenues in excess of $500,000.

27. There are no exemptions applicable to Plaintiff or to other members of the Federal Collective Group.

28. Defendant informed Account Managers of a reorganization that, upon information and belief, occurred two years ago which caused Account Managers to fall outside of any FLSA exemption. Upon information and belief, Defendant did not conduct any inquiry as to whether the reorganization would impact Account Managers' reclassification until December of 2016.

29. In recognition of their liability under the FLSA, Defendant offered to pay all Account Managers half-rate pay for all hours they self-report as having worked in the two years before January 3, 2018.

30. However, Defendant's payment offer is insufficient for three reasons: (1) it does not include liquidated damages, (2) the overtime premium pay due to Account Managers is 1.5 times the regular rate of pay, and (3) Account Managers are entitled to a regular rate of pay that includes non-discretionary performance bonuses.

31. The FLSA provides for mandatory liquidated damages "in an additional equal amount" to actual damages. 29 U.S.C. § 216(b). *See also Brock v. Claridge*

*Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988) ("the district court is without discretion to avoid imposing liquidated damages" unless the employer meets its strict burden of proving its actions were both "in good faith and that it had reasonable grounds for believing its act or omissions were not a violation of the FLSA."). Liquidated damages are not punitive, but rather account for the fact that actual damages, such as costs to the employee arising from the delay in receiving wages, may be difficult to calculate and prove. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990). In the District of Minnesota, "liquidated damages are the norm." *Fenton v. Farmers Ins. Exchange*, 663 F.Supp.2d 718, 728 (D. Minn. 2009).

32. Defendant is presumably offering to pay Account Managers half-time pay because it is under the mistaken belief that the fluctuating workweek rule applies.

33. The fluctuating workweek rule provides:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such **fixed amount** as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a **clear mutual understanding of the parties that the fixed salary is compensation** (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all

8

>overtime hours worked at a rate not less than one-half his regular rate of pay.

29 C.F.R. § 778.114 (emphasis added).

34. Defendant is not entitled to the fluctuating workweek calculation because it does not pay Account Managers a "fixed amount;" rather, it pays Account Managers a minimum base pay plus non-discretionary incentive compensation for meeting objective production criteria.

35. In addition, there is no clear mutual understanding between the parties that the minimum base pay is compensation for all work hours "whatever the number". This is illustrated by Defendant's "summer hours" policy that allows Account Managers to work half-days (four hours) on Fridays so long as they work an additional hour per day Monday-Thursday of that week. The "summer hours" policy shows that Defendant does not consider Account Managers minimum base pay to be for a fluctuating number of hours. "where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for non-overtime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula." 29 C.F.R. § 778.114. Indeed, Account Managers work overtime nearly every week without compensation for overtime hours at all.

36. As a result of Defendant's failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

37. Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

### Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully pray this Court award the following relief:

a) Certify the Federal Collective Group, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b) Enter judgment requiring Defendant to compensate Plaintiffs and the other members of the Federal Collective Group for the reasonable value of the benefits Plaintiffs and members of the Federal Collective Group provided to Defendant;

c) Award reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

d) Award payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

e) Enter judgment in favor of each Federal Collective Group member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

f) Award Plaintiffs reasonable attorneys' fees and costs; and

g) Grant such other and further legal and equitable relief as this Court deems just and necessary.

## Jury Demand

Plaintiffs demand trial by jury on all counts where jury is available.

Dated: January 9, 2018

s/ Shawn J. Wanta
Shawn J. Wanta
Bar No. 0389164
Christopher D. Jozwiak
Bar No. 386797
*Attorneys for Plaintiffs*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@baillonthome.com
cdjozwiak@baillonthome.com