UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISHAWN JOHNSON and GAVIN BRANDT, individually and on behalf of all similarly situated individuals, | Court File No. 0:18-cv-00070-PJS-HB |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF FLSA SETTLEMENT[1]** |
| v. | |
| THOMSON REUTERS d/b/a FINDLAW, | |
| Defendant. | |

**I.   Introduction**

The Parties in the above-captioned action have reached a settlement of all overtime premium pay claims and defenses in this matter on behalf of a collective group of eighteen current and former full-time Account Managers providing customer service and support to Defendant's FindLaw sales staff and their customers. The settlement is the product of several months of arm's-length negotiations between the Parties and it is a fair and reasonable resolution for all involved. The Parties have agreed to settle all claims and defenses for a maximum total gross sum of $225,000.00.

Pursuant to 29 U.S.C. § 216(b), Plaintiffs now respectfully move this Court for an Order: (1) granting the Parties' motion to approve the settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above; (2) awarding

---

[1] The Parties suggest that this motion be ruled upon this submission and waive a hearing on the motion.

as reasonable the attorneys' fees and litigation costs in the amount requested; and (3) dismissing with prejudice the claims of all Plaintiffs.

## II.  Background

### A.  The Parties

Plaintiffs are Account Managers working in the FindLaw division at defendant Thomson Reuters. Account Managers provide customer service and support to Defendant's FindLaw sales staff and their customers.

Defendant FindLaw is a Delaware corporation and Thomson Reuters business that provides Internet marketing solutions for law firms and online legal information for consumers and small businesses. According to the Minnesota Secretary of State's records, FindLaw's principal place of business address is 610 Opperman Drive, Eagan, Minnesota 55123. FindLaw operates a free legal information website with an online lawyer directory and sells law firm marketing solutions such as website, online video, online attorney profiles, search engine marketing, and Internet advertising.

### B.  The Claim

Plaintiffs bring this collective action for unpaid overtime, under § 216(b) of the Fair Labor Standards Act (FLSA), on behalf of all Account Managers working in the FindLaw division at defendant Thomson Reuters. Account Managers provide customer service and support to Defendant's FindLaw sales staff and their customers. Account Managers typically worked more than 40 hours a week to meet production quotas set by the company. Thomson Reuters classified Account Managers as exempt from the FLSA and did not pay them overtime wages. After an analysis of several positions following a reorganization,

Thomson Reuters voluntarily reclassified the Account Manager position on January 3, 2018, informing all Account Managers going forward their position was non-exempt and they should comply with the company's guidelines and seek manager approval before working over 40 hours per week. (Def.'s Ans. ¶¶ 13, 14.)

Upon reclassification, Thomson Reuters voluntarily paid employees in the Account Manager position backpay for all overtime hours worked in the prior two years. Accordingly, FindLaw asked all Account Managers who worked for the company in the previous two years to self-report the hours they recall working between January 1, 2016 and December 31, 2017. FindLaw voluntarily paid Account Managers their self-reported overtime premium pay calculated at one-half their regular rate of pay for all hours worked over 40, including the non-discretionary compensation in the regular rate of pay.

Plaintiffs agree that the payments FindLaw made to Account Managers are reasonable compensation for actual damages under the fluctuating workweek (FWW) rule. Plaintiffs disputed that the payments were sufficient, however, contending that they did not compensate Account Managers for liquidated damages and because Plaintiffs allege that they are entitled to overtime pay calculated at 1.5 times the regular rate of pay, rather than ½ times the regular rate of pay under the FWW method. The dispute in this litigation thus revolved around two central questions: (1) can FindLaw meet its strict burden of proving its actions were in good faith and that it has reasonable grounds for believing its misclassification of Account Managers was not a violation of the FLSA (the liquidated damages issue) and (2) was there a clear mutual understanding of the parties that a fixed

salary is compensation for the hours worked each week, regardless of the number of hours worked (the FWW issue).

### C. Certification of FLSA Collective Group

The Parties stipulated to certification of an FLSA collective action on May 1, 2018 (Dkt. 35.) The Court granted conditional certification. (Dkt. 37.) The Parties negotiated a notice program but required court intervention to rule upon whether email notice using Thomson Reuters' email addresses was appropriate in this case. (Dkt. 32.) After a telephone hearing, the Court ruled in the affirmative. The Parties submitted a proposed notice program in accordance with the Order, and the Court approved the program on May 2, 2018. (Dkt. 37) The opt-in period ran from May 18, 2018 until July 1, 2018. (Dkt. 46-1.)

Seventeen Account Managers consented to join this litigation in addition to the two Named Plaintiffs, bringing the total number of plaintiffs in the case to nineteen. One opt-in plaintiff withdrew from the litigation on September 7, 2018. (Dkt. 47) Including the named plaintiffs, there are eighteen individuals who will participate in the proposed settlement. The consent to join form, which opt-in plaintiffs signed to join this litigation, contained an agreement "to be represented by Plaintiffs' Counsel and to be bound by any ruling, judgment, or settlement, whether favorable or unfavorable." (Dkt. 35-1 at p. 4 (Stipulation for Conditional Certification); Dkt. 37 (Order granting conditional certification and approving the proposed notice program and opt-in procedure).

**D.     The Settlement**

    **1.     The Settlement Process**

At the initial case management conference in March 2017, the Parties requested an early settlement conference. The Court scheduled the settlement conference for September 13, 2018. (Dkt. 38.) During the intervening months, the Parties engaged in written discovery related to both liability and damages. (Wanta Decl. ¶ 2.) Plaintiffs' counsel believes that the exchange of information is sufficient for them to appropriately analyze the strengths and weaknesses of the claims and defenses at issue as well as to calculate damages for each opt-in plaintiff. (*Id.*)

The Parties participated in a full-day settlement conference facilitated by the Court. (Wanta Decl. ¶ 3.) The conference ended by the Parties agreeing to a term sheet that outlined the basic terms of a settlement. (*Id.* at ¶ 4.) The Parties negotiated a full settlement agreement and executed it on November 5, 2018. (*Id.* ¶ 5 at Ex. A "the Agreement".)

    **2.     Compensation to Plaintiffs**

The Agreement requires FindLaw to make the following payments to settlement group members within 10 days of the Court entering an order granting approval of the Agreement:

| Last Name | First Name | Amount |
|---|---|---|
| Brandt | Gavin | $8,505.42 |
| Collins | Elizabeth | $663.36 |
| Handrich | Jessica | $8,108.96 |
| Holtz | Molly | $14,796.08 |
| Janssen | Lauren | $2,477.35 |
| Johnson | Chrishawn | $11,142.91 |
| Martin | Hallie | $5,560.88 |
| Nicolson | Genna | $9,519.06 |

| Olson | Brent | $17,814.21 |
| Paulson | Melissa | $1,385.24 |
| Rasmussen | Jamie | $2,393.04 |
| Stehley | Eric | $8,897.03 |
| Swanson | Aaron | $4,068.17 |
| Tucci | Ashley | $14,665.38 |
| Vanecek | Andrew | $5,041.80 |
| Vosberg | Rachel | $2,423.57 |
| Welters | Kristine | $2,020.11 |
| Lyon | Chris | $516.62 |

*See* Agreement, Exhibit A. The Settlement payments will be designated as wages with payroll taxes withheld and required on an IRS W-2 form.

The payments to each settlement group member represent liquidated damages calculated at one-half the regular rate of pay for the number of overtime hours each member self-reported to FindLaw, plus an enhancement of approximately 1%. (Wanta Decl. ¶ 6.) The regular rate of pay calculation includes each person's salary plus non-discretionary incentive payments (known as STI within the company). (*Id.*)

### 3. Releases of Claims

The Named Plaintiffs have executed a general release of claims against FindLaw that accrued before September 13, 2018. (*See* the Agreement at pp. 7-8.) The release for opt-in plaintiffs is limited only to claims of unpaid overtime under the FLSA and analogous state law that accrued before September 13, 2018. (*See id.* at p. 7.) All settlement checks will include the following release printed above the endorsement line: "I understand that by accepting my settlement payment for alleged overtime owed to me under the FLSA and by signing below, I will be releasing any and all past claims for overtime payment I may or do have against Thomson Reuters that accrued before September 13, 2018." (*Id.* at p. 7.)

### 4.     Attorneys' Fees, Cost Reimbursement, and Service Awards

The settlement agreement provides $95,000 for reimbursement of attorneys' fees and costs to be paid directly by FindLaw. (*See* the Agreement at p. 6.) Attorneys' fees and costs will not reduce the amount of money paid to the settlement group. (*See id.*) This amount was negotiated at arm's-length during the settlement conference after an agreement on relief to the settlement group. (Wanta Decl. ¶ 7.)

The Agreement provides a service award of $5,000 to each of the two Named Plaintiffs. (*See* the Agreement at p. 6.) Like the payment of attorneys' fees and costs, FindLaw has agreed to pay the service awards directly to the Named Plaintiffs and the payment will not reduce the amount of money paid to the settlement group. (*See id.*)

## III.    Argument

### A.     Legal Standard

Employees may settle or compromise claims arising under the FLSA in the context of a suit to recover back wages under section 216(b) of the FLSA. *See*, *e.g.*, *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981). In fact, public policy favors settlement and is particularly pronounced in class actions. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). Since *Barrentine*, "federal courts have generally held that 'there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.'" *McInnis v. Ecolab Inc.*, No. 11-02196, 2012 WL 892187, at *1 (D. Minn. Feb 17, 2012) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)). The first way, pursuant to the FLSA,

is through issuance of wage payments under supervision by the Secretary of Labor. 29 U.S.C. § 216(c). In the absence of Department of Labor supervision:

> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*McInnis*, 2012 WL 892187, at *1-2 (citing *Lynn's Food Stores*, 679 F.2d at 1353).

It is an open question whether judicial approval of a proposed settlement of FLSA claims is necessary in the absence of a final certified collective action. *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018); *Stainbrook v. Minn. Dept. of Pub. Safety*, 239 F. Supp. 3d 1123, 1127 (D. Minn. 2017) (citing *King v. Raineri Const., LLC*, No. 4:14–CV–1828 (CEJ), 2015 WL 631253, at *1 (E.D. Mo., Feb. 12, 2015)); *but see Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) ("It is well established that FLSA rights are statutory and cannot be waived."). When approval is necessary, a district court may approve a proposed FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair. *Stainbrook*, 239 F. Supp. 3d at 1126; *see also McInnis*, 2012 WL 892187, at *2 ("This single obligation—to ensure that a settlement is 'fair'—can be contrasted with the Court's responsibility to oversee traditional class settlements under Federal Rule of Civil Procedure 23, which include the facilitation of 'reasonable' notice . . . and ensuring that class members have an opportunity to object to the settlement.").

"In making a fairness determination, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.' " *Netzel v. West Shore Group, Inc.*, No. 16–CV–2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn., May 8, 2017) (quoting *Crabtree v. Volkert, Inc.*, No. 11–CV–529 (WS/B), 2013 WL 593500, at *3 (S.D. Ala., Feb. 14, 2013)). The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses. *Brask v. Heartland Auto. Servs., Inc.*, No. 06–CV–00011 RHK/AJB, 2006 WL 2524212, at *2 (D. Minn., Aug. 15, 2006). A district court may also consider a multitude of other factors, including: the stage of the litigation and the amount of discovery exchanged; the experience of counsel; any overreaching by the employer in the settlement negotiations; and whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case. *Stainbrook*, 239 F. Supp. 3d at 1126. The Court may presume no fraud or collusion occurred between counsel absent evidence to the contrary. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720, 725 (E.D. La. 2008). The FLSA also requires that a settlement agreement include an award of reasonable attorneys' fees and costs of bringing the action. *See* 29 U.S.C. § 216(b). A review of attorneys' fees requires "a certain level of deference" by the district court to the parties' agreement. *Melgar*, 902 F.3d at 779.

A one-step approval process is appropriate in collective actions brought pursuant to the FLSA that do not include proposed Federal Rule of Civil Procedure 23 class releases. *Bainter v. Akram Inv., LLC*, No. 17 Civ. 7064, 2018 WL 4943884, at *2 (N.D. Ill., Oct 9, 2018) (collecting cases); *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL

9

2095172, at *2 (N.D. Ohio, May 4, 2018); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass., June 8, 2017) (same). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective action from bringing their own suits in the future, FLSA collective action settlements do not implicate the same due process concerns as traditional Rule 23 class actions. *See Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1532, 569 U.S. 66, 78 (2013) ("Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23."); *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 216(b)."). Here, a one-step approval process is particularly appropriate because the collective group members affirmatively provided consent to be bound by any settlement when they opted in to the FLSA action. Absent any indication that the reasonableness of the settlement is a "close question," *Prena v. BMO Financial Corp.*, No. 15 Civ 09175, 2015 WL 2344949, at *1 (N.D. Ill., May 15, 2015), the court should proceed with a one-step approval process ensuring the settlement is fair.

### B. The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

Here, the fact that the settlement agreement resulted from a lengthy negotiation process—including a full-day conference facilitated by Magistrate Judge Bowbeer—strongly supports a finding that the settlement was negotiated at arm's-length without overreaching by the employer. Both Parties are represented by experienced counsel, well-

equipped to provide vigorous, competent, and efficient representation. The Parties stipulated to conditionally certify the class, indicating an advanced stage of litigation. However, there remains some risk that Defendant will be able to decertify the class based upon a "mixed exemption" theory; that is, Defendant may attempt to prove that at least some Account Managers are exempt and that its voluntary reclassification is not an admission that those individuals were misclassified.

The damages in dispute in this litigation revolve around two central questions: (1) can FindLaw meet its strict burden of proving its actions were in good faith and that it has reasonable grounds for believing its misclassification of Account Managers was not a violation of the FLSA; and (2) was there a clear mutual understanding of the Parties that a fixed salary is compensation for the hours worked each week, regardless of the number of hours worked? Plaintiffs' counsel estimates that liquidated damages proven at trial would be approximately $117,952 and that damages for proving that the FWW does not apply would be approximately $230,658.90. If Plaintiffs were to prevail on all legal and factual issues, their damages at trial could be as high as $461,317. Resolving the bona fide dispute surrounding these two issues would likely require complex, costly, and prolonged litigation. These issues also would not likely be resolved on summary judgment, requiring further litigation and trial. Counsel for both sides have advised their respective clients regarding the settlement; this Court should afford that recommendation some weight.

### 1. The Settlement Fairly Resolves a Bona Fide Dispute Concerning Liquidated Damages

The FLSA provides for mandatory liquidated damages "in an additional equal amount" to actual damages unless the employer can prove good faith and reasonable grounds for its actions. 29 U.S.C. § 216(b); *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir.1999) ("An award of liquidated damages under § 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA."). *See also Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988) ("the district court is without discretion to avoid imposing liquidated damages" unless the employer meets its strict burden of proving its actions were both "in good faith and that it had reasonable grounds for believing its act or omissions were not a violation of the FLSA."). Liquidated damages are not punitive, but rather account for the fact that actual damages, such as costs to the employee arising from the delay in receiving wages, may be difficult to calculate and prove. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990). The costs to the employee arising from the delay in payment of wages include things such as missed payment on bills, increased interest on debt, foregoing entertainment, and similar items.

In the District of Minnesota, "liquidated damages are the norm." *Fenton v. Farmers Ins. Exch.*, 663 F. Supp. 2d 718, 728 (D. Minn. 2009). This is also true in the Eighth Circuit: The employer bears the burden of proving both good faith and reasonableness, 'but the burden is a difficult one, with double damages being the norm and single damages the exception.' " *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941–42 (8th Cir. 2008)

quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). Plaintiffs argued liquidated damages were appropriate under the caselaw and the company could not establish good faith in the reclassification process.

But liquidated damages were not certain. FindLaw could avoid paying liquidated damages if it proved "'an honest intention to ascertain and follow the dictates of the FLSA.'" *Chao*, 547 F.3d at 943 quoting *Hultgren*, 913 F.2d at 509. To meet this burden, FindLaw must prove two things: (1) that it took good faith "affirmative steps" to ascertain the FLSA's requirements; and (2) that its position was objectively reasonable. FindLaw argued that it could establish good faith under the relevant caselaw and that the record would establish that the company acted reasonably and diligently in analyzing the Account Manager position, despite that the reclassification process was affected by a "large scale reduction in force" which implicated the Account Manager positions. The proposed settlement fairly resolves a bona fide dispute over whether FindLaw would be required to pay liquidated damages after trial.

### 2. The Settlement Fairly Resolves a Bona Fide Dispute Concerning FWW Calculations

The FWW method of calculating overtime derives from *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), *superseded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 n.22 (1985). After the decision in *Missel*, the Department of Labor incorporated the FWW method into an interpretive bulletin. *See* 29 C.F.R. § 778.114. According to that interpretive bulletin, an employer can comply with the overtime requirements of 29 U.S.C. § 207(a) by paying overtime pursuant

to the FWW method provided that the conditions specified in that interpretive bulletin are met. The bulletin provides:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

29 C.F.R. § 778.114.[2] The FWW impacts damages because it is the difference between Account Managers recovering one-half their regular rate of pay per overtime hour or one-and-one-half times their regular rate of pay per overtime hour.

Plaintiffs' position is that FindLaw is not entitled to the FWW calculation because it does not pay Account Managers a "fixed amount"; rather, it pays Account Managers a minimum base pay plus non-discretionary incentive compensation for meeting objective production criteria. Plaintiffs allege the non-discretionary incentive payments are tied to the number of hours Account Managers work because the more accounts they service, the

---

[2] Federal courts are divided on the legal question of whether an employer can rely upon 29 C.F.R. § 778.114 where an employee has been misclassified. *Compare Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1013–14 (N.D. Cal. 2009) (holding that the FWW cannot be used retrospectively in a misclassification case) *with Desmond v. PNGI Charles Town Gaming, LLC*, 661 F. Supp. 2d 573, 579–85 (N.D.W. Va. 2009) (applying the FWW method in a case where the employer misclassified its employees as exempt). The Eighth Circuit has not directly addressed this issue.

higher their incentive pay. Thus, FindLaw encourages Account Managers to work more hours in exchange for higher bonus payments. In addition, Plaintiffs allege there is no clear mutual understanding between the parties that the minimum base pay is compensation for all work hours "whatever the number."

This Court has rejected the argument that an employee who receives a salary is subject to the FWW rule based upon that fact alone. *See Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1083 (D. Minn. 2015). The issue is whether the parties shared an understanding of the arrangement. *Id.* However, there is a persuasive authority holding that the FWW rule applies to the calculation of damages where employees were previously classified as exempt and paid on a salary basis. *See Urnikis–Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896 (D. Minn. 2010). *See also Yellow Transit Freightlines, Inc. v. Balven*, 320 F.2d 495, 499–500 (8th Cir. 1963) (holding that overtime should have been calculated by one-half rather than one and one-half at the regular rate for an employee who was misclassified as exempt pursuant to the then-recognized motor carrier exemption); *Anderson v. Fed. Cartridge Corp.*, 156 F.2d 681, 685 (8th Cir. 1946) (applying FWW in calculating overtime damages for employees misclassified as exempt pursuant to the executive or administrative exemptions); *Landreth v. Ford, Bacon & Davis, Inc.*, 147 F.2d 446, 448 (8th Cir. 1945) (applying the FWW method to an employee who was misclassified as a supervisor). But, even if the FWW rule is available to Defendant, the company still has the burden to prove a clear mutual understanding of that FindLaw and its employees agreed the compensation was for all hours worked, however many or few. Thus, the proposed settlement fairly

resolves a bona fide dispute over whether FindLaw should have paid Account Managers overtime premium pay calculated at one-half their regular rate of pay or one-and-one-half times their regular rate of pay.

### C. Payment of Attorneys' Fees and Expenses to Plaintiffs' Counsel Should be Approved Because it is Fair and Reasonable

In addition to the payments to the collective group members, Defendant has agreed to pay Plaintiffs' Counsel attorneys' fees and out-of-pocket costs and expenses incurred by all of Plaintiffs' counsel in an amount not to exceed $95,000, subject to Court approval. (*See* Settlement Agreement, § 14.) The applicable statute in this litigation mandates an award of attorneys' fees and costs. The FLSA provides that "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n.5 (1978) (referring to § 216 of the FLSA as one of the "statutes [that] make fee awards mandatory for prevailing plaintiffs").

It is well established that "attorney fees are an integral part of the merits of FLSA cases." *Shelton v. M.P. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987). Indeed, the ability of FLSA claimants to recover a reasonable attorney's fee is crucial to the statute's enforcement scheme. *See, e.g.*, *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (explaining that the recovery of FLSA attorney's fees "ensure[s] effective access to the judicial process [and] encourages the vindication of congressionally identified policies and rights"). Accordingly, it is commonplace and entirely consistent with the FLSA's

legislative purpose for FLSA attorneys' fees awards to equal or exceed the plaintiffs' recovered unpaid wages. *See, e.g.*, *id.* (upholding award of $40,000 in fees even though plaintiff recovered only $7,680 in damages); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354-358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though plaintiff recovered only $1,698); *Bonnett v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Servs.*, No. 08–4703, 2010 WL 3282623 (E.D. Pa., Aug. 18, 2010) (awarding $73,195 for attorneys' fees and $2,871.78 for costs for a judgment of less than $18,000); *Albers v. Tri-State Implement, Inc.*, CR. 06-4242-KES, 2010 WL 960010 (D.S.D., Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' damages totaled only $2,137.97). Plaintiffs' attorneys' fees are eligible for a multiplier because Plaintiffs' counsel have accepted this case on a contingency basis. *See, e.g. In re UnitedHealth Grp., Inc. S'holder Derivative Litig.,* 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying a lodestar enhancement of 2.75 where the court found "[c]ounsel took the case on a contingent basis, working without pay for three years … assuming the risk of null recovery … [and] worked effectively to achieve settlement.").

With respect to costs of the action, the defendant must reimburse prevailing plaintiffs for the sort of costs that are "normally charged to a fee-paying client." *See, e.g., Renfro v. Ind. Mich. Power Co.*, No. 1:99-CV-877, 2007 WL 710138 at *1 (W.D. Mich., Mar. 6, 2007) (overruled on other grounds, 497 F.3d 573 (6th Cir. 2007) (citations omitted)); *Communities for Equity v. Mich. High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031 at *22–23 (W.D. Mich., Mar. 31, 2008).

As has been demonstrated thus far in this litigation and lengthy negotiation process, Baillon Thome Jozwiak & Wanta LLP are experienced and well-equipped to vigorously, competently, and efficiently represent the proposed Settlement Collective Group. (Wanta Decl. ¶¶ 3, 17.) Notably, Defendant has also agreed to the firms' appointment as Counsel to the Collective Group. (*See* Settlement Agreement at § A.4.) The Court should accordingly appoint the firms as Counsel for the Collective Group and approve the award of attorneys' fees.

The following represents Plaintiffs' Counsel's fees and costs in this matter:

- Baillon Thome Jozwiak & Wanta LLP had in excess of 208 hours with a total lodestar of $101,012.50. (*See* Wanta Decl., ¶ 9.)
- Baillon Thome Jozwiak & Wanta LLP's expenses in the matter are $488.74. (*Id.* at ¶ 10).

The combined fee and cost request of $95,000 reflects a reduction on Plaintiffs' Counsel's actual fees and costs. It is particularly reasonable considering Plaintiffs' Counsel will be covering the costs of the administration of the settlement and will continue to incur fees through the close of the notice period. Plaintiffs' counsel's fee request represents the product of negotiations with FindLaw in an effort to resolve all aspects of this litigation. Plaintiffs' counsel's requested fees and cost reimbursement is reasonable and within the scope of the FLSA.

## IV.  Conclusion

The settlement of this action is a compromise that takes into account the complex factual and legal issues that the litigants confronted in this case, was achieved in good faith and through arms' length negotiations and is not the product of fraud or collusion. The

record indicates that the proposed settlement satisfies the relevant criteria under Section 216(b) of the FLSA.

Based upon the foregoing, and pursuant to Section 216(b) of the FLSA, Plaintiffs respectfully request that this Court enter an Order: (1) granting the Parties' motion to approve the settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above; (2) awarding as reasonable the attorneys' fees and litigation costs in the amount requested; and (3) dismissing with prejudice the claims of all Plaintiffs.

Dated: December 14, 2018                    Respectfully submitted,

                                            s/Shawn J. Wanta
                                            Shawn J. Wanta
                                            Bar No. 389164
                                            Christopher D. Jozwiak
                                            Bar No. 386797
                                            Scott A. Moriarity
                                            Bar No. 321977
                                            *Attorneys for Plaintiffs*
                                            BAILLON THOME JOZWIAK & WANTA LLP
                                            100 South Fifth Street, Suite 1200
                                            Minneapolis, MN 55402
                                            Telephone: (612) 252-3570
                                            Fax: (612) 252-3571
                                            sjwanta@baillonthome.com
                                            cdjozwiak@baillonthome.com
                                            smoriarity@baillonthome.com