UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISHAWN JOHNSON and GAVIN BRANDT, individually and on behalf of all similarly situated individuals, | Case No. 18-CV-0070 (PJS/HB) |
| Plaintiffs, | |
| v. | ORDER |
| THOMSON REUTERS, doing business as FindLaw, | |
| Defendant. | |

Christopher D. Jozwiak, Scott Moriarity, and Shawn J. Wanta, BAILLON THOME JOZWIAK & WANTA LLP, for plaintiffs.

Susan E. Ellingstad, LOCKRIDGE GRINDAL NAUEN PLLP, for defendant.

Plaintiffs Chrishawn Johnson and Gavin Brandt are the named plaintiffs in this collective action under the Fair Labor Standards Act ("FLSA"). They have asked the Court to approve a settlement between plaintiffs and defendant Thomson Reuters. ECF No. 50. For the reasons that follow, the settlement is approved, and plaintiffs' claims are dismissed.

I. BACKGROUND

Plaintiffs are Account Managers who work or formerly worked in the FindLaw division of Thomson Reuters. ECF No. 37 at ¶ 2. FindLaw Account Managers are generally responsible for "[e]nsur[ing] client retention and satisfaction" by providing "all clients" with "first class customer care." ECF No. 1 at ¶¶ 10(a)-(b). Account Managers are also responsible for identifying and successfully pursuing various sales opportunities; in the jargon of their workplace, they "[i]dentify and provide up-sell and cross sell lead opportunities to field partners" and "[s]ecure contract renewals for [an] assigned portfolio of customers." *Id.* at ¶¶ 10(d)-(e).

Johnson and Brandt allege that Account Managers were improperly classified as exempt from the FLSA's overtime provisions prior to January 3, 2018, and thus were not paid overtime wages, even though they "regularly worked more than 40 hours each workweek." *Id.* at ¶¶ 1-2, 12, 25. Instead, Johnson and Brandt allege, Account Managers received only "a base salary, non-discretionary incentive compensation, [and] participation in an employee incentive plan" (along with other "fringe benefits"). *Id.* at ¶ 11.

On January 3, 2018, Thomson Reuters reclassified the Account Manager position as non-exempt and began paying overtime wages to Account Managers. *Id.* at ¶ 13. Thomson Reuters also offered to pay the Account Managers back pay for any overtime

worked during the two years preceding January 3, 2018. *Id.* at ¶ 29. Thomson Reuters calculated each Account Manager's back-pay offer by multiplying the number of overtime hours reported by the Account Manager by one-half of the Account Manager's regular rate of pay. *Id.*

Johnson and Brandt brought this action on behalf of themselves and similarly situated Account Managers because they believe that Thomson Reuters's offer fails to fully compensate them for the overtime compensation that they would have earned had they not been classified as exempt. Johnson and Brandt argue that Thomson Reuters's offer is insufficient for two main reasons: First, the offer does not include liquidated damages. Second, the offer does not pay for past overtime at 1.5 times the regular rate of pay. ECF No. 1 at ¶ 30.

The parties agreed to conditional certification of the collective (ECF Nos. 35, 37), and all potential plaintiffs received notice of this action by email (ECF No. 37 at ¶ 6). Seventeen other Account Managers opted in to the litigation, joining Johnson and Brandt as plaintiffs. ECF Nos. 6-8, 10, 12, 14-15, 23, 31, 33, 39-45. One of those Account Managers subsequently opted out. ECF No. 47. Now, after informal discovery and a full-day settlement conference with Magistrate Judge Hildy Bowbeer, the parties have reached a settlement.

The settlement calls for Thomson Reuters to pay a total of $120,000 in liquidated damages to the FLSA collective. ECF No. 52-1 at 7. To reach that number, the parties took the number of overtime hours that the Account Managers reported working during the period from January 1, 2016, to December 31, 2017, multiplied that number by one-half of the regular rate of pay of the Account Managers, and added an enhancement of approximately one percent. ECF No. 52 at ¶ 6; ECF No. 51 at 3. The regular rate of pay was calculated using the Account Managers' base salaries plus non-discretionary incentive payments. ECF No. 51 at 6. In exchange for this payment of liquidated damages, the opt-in plaintiffs agree to waive "any and all past claims for overtime payment [they] may or do have against Thomson Reuters that accrued before September 13, 2018." ECF No. 52-1 at p. 8, ¶ c. The settlement also calls for each named plaintiff to receive a service award of $5,000 and for Thomson Reuters to reimburse $95,000 of plaintiffs' attorney's fees and costs. *Id.* at p. 7, ¶¶ b-c.

II. ANALYSIS

*A. Standard of Review*

The parties have asked the Court to approve their settlement.[1] The Court thus reviews the settlement to ensure that there is a bona fide dispute under the FLSA and that the settlement "is a fair and reasonable resolution of [that] bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017).

*B. The Settlement Agreement*

1. Bona Fide Dispute

A "bona fide dispute" exists when there are "issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Lynn's Food Stores*, 679 F.2d

---

[1]It is not entirely clear whether court approval is necessary. *Compare Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) ("After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment." (citing *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008))), *with Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("recogniz[ing] an apparent circuit split as to whether private settlements relating to FLSA claims require district court review," but "not address[ing the] issue"). *Compare also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (holding that parties cannot agree to a settlement that dismisses FLSA claims with prejudice without approval from either the Department of Labor or a district court), *with Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 254-56 (5th Cir. 2012) (enforcing a private FLSA settlement agreement even when the settlement never received court or Department of Labor approval).

at 1354. The Account Managers and Thomson Reuters have at least four bona fide disputes:

*First*, the parties disagree about whether the Account Managers were properly classified as exempt prior to January 3, 2018. Thomson Reuters does not concede that the Account Managers are now, or ever have been, covered by the FLSA's overtime provisions. ECF No. 57 at ¶ 6; ECF No. 52-1 at p. 6, ¶ a. Rather, Thomson Reuters insists that its reclassification of the Account Managers as non-exempt was voluntarily. ECF No. 19 at ¶¶ 14, 30.

*Second*, the parties disagree about whether "it is appropriate for this case to proceed on a collective basis." ECF No. 35 at 2; *see also* ECF No. 51 at 11. Thomson Reuters argues that, even if *some* Account Managers were misclassified, not *all* of the Account Managers were misclassified. *See* ECF No. 51 at 11. Were the litigation to proceed, then, Thomson Reuters might move to decertify the collective based on a "mixed-exemption" theory. *Id.*

*Third*, the parties disagree about whether the Account Managers are entitled to liquidated damages. ECF No. 19 at ¶ 31; ECF No. 51 at 13. An employer who violates the overtime provisions of the FLSA is liable for both (1) "unpaid overtime compensation" and (2) "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "As used in the FLSA 'liquidated damages' is something of a misnomer. It is

not a sum certain, determined in advance as a means of liquidating damages that might be incurred in the future. It is an award of special or exemplary damages added to the normal damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 n.3 (2d Cir. 1988).

"An award of liquidated damages under section 216(b) [of the FLSA] is mandatory unless the employer can show [1] good faith and [2] reasonable grounds for believing that it was not in violation of the FLSA." *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1999) (citation omitted). The good-faith requirement is subjective; the employer must demonstrate that it had "an honest intention to ascertain and follow the dictates of the FLSA." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (quoting *Hultgren v. Cty. of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990)). "To carry [its] burden, a defendant employer must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)). The reasonable-grounds requirement is objective; the employer must "prove its position was objectively reasonable." *Id.* (quoting *Hultgren*, 913 F.2d at 509).

Here, Thomson Reuters contends that it can establish both good faith and reasonable grounds. Thomson Reuters asserts that it "acted reasonably and diligently in analyzing the Account Manager position" and that it reclassified that position as non-exempt only after the position was impacted by a company reorganization and "large

scale reduction in force." ECF No. 51 at 13. Thus, says Thomson Reuters, it cannot be held liable for liquidated damages.

*Fourth*, the parties disagree about how to calculate any overtime wages owed to plaintiffs. Specifically, the parties disagree about whether the "Fluctuating Work Week" ("FWW") method may be applied in calculating the amount of overtime compensation owed to plaintiffs (assuming that Thomson Reuters is found to have wrongly classified plaintiffs as exempt). *See* 29 C.F.R. § 778.114. If the FWW method applies, then the Account Managers are deemed to have already received their regular rate of compensation for all hours that they worked, including overtime hours (in other words, to have already been paid for the "time" in "time and one half"[2]). *See* 29 C.F.R. § 778.114(a) ("Payment for overtime hours at one-half [the regular] rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."). Thus, each plaintiff would be entitled to only one-half times his or her regular rate of pay multiplied by the number of overtime hours worked. If the FWW method does not apply, then the Account Managers are deemed not to have been paid at all for their

---

[2]"The FLSA requires employers to compensate [all non-exempt] employees for each hour worked in excess of forty hours during a workweek 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'" *Lalli v. Gen. Nutrition Ctrs.*, 814 F.3d 1, 2 (1st Cir. 2016) (quoting 29 U.S.C. § 207(a)(1)).

overtime hours (in other words, not to have been paid for either the "time" or the "one half" in "time and one half"). Thus, each plaintiff would be entitled to 1.5 times his or her regular rate of pay multiplied by the number of overtime hours worked.

For the FWW method to apply, a number of requirements must be met. *See Hall v. Plastipak Holdings, Inc.*, 726 F. App'x 318, 320-21 (6th Cir. 2018); *Flood v. New Hanover Cty.*, 125 F.3d 249, 252 (4th Cir. 1997). For example, the employees must be paid a "fixed salary," and there must be a "clear mutual understanding" between the employer and the employees "that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a).

The parties disagree about whether the FWW method can be used in calculating any damages owed by Thomson Reuters. Their disagreement really has two parts: First, the parties disagree about whether the FWW method can *ever* be applied retroactively when calculating damages in a misclassification case (such as this one). Second, assuming that it is possible to apply the FWW method retroactively in misclassification cases, the parties disagree about whether the prerequisites for applying the method can be found in *this* case. *See* ECF No. 51 at 13-16.

2. Fair and Reasonable Resolution

To determine whether the parties' dispute was settled in a "fair and reasonable" manner, the Court should consider the "totality of the circumstances." *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132-33 (D.D.C. 2014); *see also Brask v. Heartland Auto. Servs., Inc.*, No. 06-CV-0011 (RHK/AJB), 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006), *R&R adopted at* ECF No. 21 (court should consider "all relevant factors"). Relevant factors for the Court to consider may include: the complexity, expense, and likely duration of litigation; the stage of the proceedings and the amount of discovery completed; the experience of counsel; any overreaching by the employer during settlement negotiations; and whether the settlement was the product of arm's-length negotiations between represented parties. *See Stainbrook*, 239 F. Supp. 3d at 1126 (citing *King v. Raineri Constr., LLC*, No. 4:14-CV-1828, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015)); *Brask*, 2006 WL 2524212, at *2 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). "The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses." *Brask*, 2006 WL 2524212, at *2 (citing *City of Detroit*, 495 F.2d at 455).

In this case, plaintiffs have been represented by able counsel throughout the litigation. Plaintiffs' counsel have received informal discovery and are satisfied "that the exchange of information [was] sufficient for them to appropriately analyze the

strength and weaknesses of the claims and defenses at issue as well as to calculate damages for each opt-in plaintiff." ECF No. 52 at ¶ 2. The parties engaged in months of settlement talks, including a full-day settlement conference with Judge Bowbeer. *Id.* at ¶ 3; ECF No. 57 at ¶ 24. There is no evidence of any overreaching by Thomson Reuters, and no evidence that this was anything but an arms-length negotiation. As to the specific terms of the settlement:

*a. The Collective's $120,000 Award*

The Court finds that the $120,000 award to the collective represents a reasonable resolution of the parties' bona fide disputes. Before plaintiffs even sued, Thomson Reuters had agreed to compensate them for unpaid overtime pursuant to the FWW method. In this lawsuit, plaintiffs are seeking the additional overtime compensation to which they would be entitled if the FWW method were not applied, as well as liquidated damages.

The settlement gives plaintiffs some, but not all, of what they would recover if they prevailed on every contested issue. Specifically, plaintiffs are receiving all of the liquidated damages that they would be awarded if (1) they were found to have been misclassified, (2) they were found to be entitled to liquidated damages, and (3) the FWW method was found to apply. ECF No. 57 at ¶ 28; ECF No. 51 at 11. Thus, the only thing that plaintiffs are *not* receiving is the *non*-FWW damage amounts (i.e., backpay

damages and liquidated damages calculated at 1.5 times their rate of pay instead of at one-half times their rate of pay).

Of course, there is no guarantee that, if this case were litigated to a conclusion, plaintiffs would prevail on every—or even *any*—contested issue. In particular, it is far from clear that plaintiffs would be successful in arguing that the FWW method should not apply in calculating the amount of back pay that they are owed.

Many of the courts of appeals have concluded—contrary to plaintiffs' contention in this case—that the FWW method can indeed be applied retroactively to calculate damages in misclassification cases. *See, e.g.*, *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 38-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).[3] The Eighth Circuit has not addressed the issue recently, but, in the past, it has approved the use of the FWW method to calculate damages in misclassification cases. *See, e.g.*, *Yellow Transit Freight*

---

[3] Some district courts have come to an opposite conclusion. *See, e.g.*, *Strauch v. Comput. Scis. Corp.*, Civ. No. 3:14-CV-956 (JBA), 2018 WL 5870337, at *1-4 (D. Conn Nov. 9, 2018); *Boyce v. Indep. Brewers United Corp.*, 223 F. Supp. 3d 942, 946-49 (N.D. Cal. 2016); *Snodgrass v. Bob Evans Farms, LLC*, No. 2:12-cv-768, 2015 WL 1246640, at *6-14 (S.D. Ohio Mar. 18, 2015); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 202-08 (D. Conn. 2013); *Wallace v. Countrywide Home Loans Inc.*, No. SACV 08-1463-JST (MLGx), 2013 WL 1944458, at *3-7 (C.D. Cal. Apr. 29, 2013).

*Lines, Inc. v. Balven*, 320 F.2d 495, 499-500 (8th Cir. 1963); *Anderson v. Fed. Cartridge Corp.*, 156 F.2d 681, 685 (8th Cir. 1946); *Landreth v. Ford, Bacon & Davis, Inc.*, 147 F.2d 446, 448-49 (8th Cir. 1945). More recently, judges in this District have also applied the FWW method in calculating damages in misclassification cases. *See Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1082-83, 1083 n.7 (D. Minn. 2015); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 918-19 (D. Minn. 2010). Plaintiffs' argument that the FWW method cannot be applied retroactively to calculate damages in misclassification cases appears to have little chance of success.

Of course, in order to find that the FWW method applies on the facts of *this* misclassification case, the Court would need to find that the doctrine's requirements are met, including that (1) the Account Managers received a "fixed salary" and (perhaps) that (2) Thomson Reuters and its Account Managers had a "clear mutual understanding" that their fixed salary was for all hours worked. 29 C.F.R. § 778.114(a).

As to the fixed-salary requirement: Plaintiffs contend that they do not receive a fixed salary, but rather "a minimum base pay plus non-discretionary incentive compensation for meeting objective production criteria. Plaintiffs allege [that] the non-discretionary incentive payments are tied to the number of hours Account Managers work because the more accounts they service, the higher their incentive pay." ECF No. 51 at 14-15. But similar arguments have often been rejected in FLSA actions.

*See Soderberg v. Naturescape, Inc.*, No. 10-CV-3429 (PAM/JJG), 2011 WL 11528148, at *5 (D. Minn. Nov. 3, 2011) ("... payment of performance-based bonuses [does] not preclude application of the FWW."); *see also Lalli*, 814 F.3d at 7 (finding that sales commissions and the FWW-calculation method are compatible because while "a bonus for particular hours worked necessarily varies by the hour worked . . . a commission for sales only incidentally varies by the hour worked"); *Mozingo v. Oil States Energy Servs., L.L.C.*, Civ. A. No. 15-529, 2017 WL 3219345, at *3 (W.D. Pa. July 28, 2017) (same); *Ouellette v. Fresh Mkt., Inc.*, Civ. No. 3:13CV1027(AWT), 2015 WL 13505210, at *3 (D. Conn. Mar. 25, 2015) (same); *Willis v. RadioShack Corp.*, 981 F. Supp. 2d 245, 256-63 (S.D.N.Y. 2013) (same). *But see Sisson v. Radioshack Corp.*, No. 1:12CV958, 2013 WL 945372, at *7 (N.D. Ohio Mar. 11, 2013) (finding that the FWW-calculation method "is incompatible with bonus payments").

As to the mutual-understanding issue: It is far from clear that the Court would even have to find a "clear mutual understanding" before applying the FWW method to calculate damages.[4] Putting that aside, in virtually every misclassification case, the employer asserts that it understood the employee's base salary to be compensation for

---

[4]Some courts have rejected the notion that finding a "clear mutual understanding" is necessary in misclassification cases. *See, e.g., Mozingo*, 2017 WL 3219345, at *3 (finding that the mutual-understanding requirement does not apply in retroactivity cases and instead all that is required is "an agreement for a fixed weekly wage for irregular hours" (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 574 (1942))).

-14-

all hours worked, and courts have not demanded much before finding that the employees shared that understanding. If the employer communicated its understanding to the employees in some way—or even if the employees simply cashed their paychecks without objection[5]—the employees may be found to have shared the employer's understanding. This precise problem is why some courts have expressed skepticism about applying the FWW method in misclassification cases. *See, e.g.*, *Ransom v. M. Patel Enters., Inc.*, 825 F. Supp. 2d 799, 806 (W.D. Tex. 2011).

In short, plaintiffs do not have much reason for optimism that, if they litigated this case to a conclusion, the Court would find that the FWW method does not apply. At the same time, plaintiffs would run a number of risks by continuing to litigate this case: The collective might be decertified, plaintiffs might be found exempt and thus not entitled to *any* overtime wages, and plaintiffs might be found not to be entitled to liquidated damages. Under the circumstances, the Court finds that the $120,000 collective award is a fair and equitable resolution of the bona fide disputes.

*b. The Named Plaintiffs' $5,000 Service Awards*

The Court finds that the $5,000 service awards to each of the named plaintiffs are reasonable. Those awards are within the range that courts have found reasonable in

---

[5]*See, e.g.*, *Valerio*, 173 F.3d at 39-40 (finding a "clear mutual understanding" when "[d]uring the first eleven months of her employment, [the plaintiff] routinely worked without complaint more than 40 hours per week without extra pay").

similar FLSA actions. *See, e.g.*, *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *7-8 (D. Minn. May 8, 2017), *R&R adopted at* ECF No. 36 (recommending approval of a $5,000 and $3,000 service award to named plaintiffs in a FLSA collective action and collecting other similar cases).

### c. The $95,000 in Attorney's Fees

Under the FLSA, successful plaintiffs are entitled to recover reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b). The starting point for calculating a reasonable award of attorney's fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).

Thomson Reuters has agreed to reimburse plaintiffs for $95,000 of their attorney's fees and costs. In support of this agreement, plaintiffs' attorneys have submitted billing information calculating their lodestar at $101,012.50 based on 208.55 hours expended. *See* ECF No. 57 at pp. 7-8. Specifically, plaintiffs' attorneys have billed partner Shawn J. Wanta at $600 per hour for 93.9 hours, partner Christopher Jozwiak at $600 per hour for 18 hours, partner Scott Moriarity at $550 per hour for 46.4 hours, and paralegals, law clerks, and legal assistants at hourly rates ranging from $150 to $210 for 50.25 hours. *Id.* No associate hours were billed. *Id.*

The Court is skeptical about the reasonableness of these rates; in particular, the $600 hourly rate for Wanta and Jozwiak and the $550 hourly rate for Moriarity strike the Court as excessive. But the Eighth Circuit has admonished district courts to afford "a certain level of deference" when reviewing the amount of attorney's fees that the defendant agrees to pay in settling a FLSA collective action. *Melgar*, 902 F.3d at 779; *see also Roark v. Nat'l Park Motors, Inc.*, No. 6:17-CV-06131, 2019 U.S. Dist. LEXIS 5530, at *5-6 (W.D. Ark. Jan. 11, 2019) (discussing how although it "would be inclined to reduce the [$5,190 in requested] attorneys' fees to a reasonable amount—likely in the hundreds of dollars," it would not do so given the Eighth Circuit's command to be "more deferential" when approving stipulated-to attorney's fees in a FLSA collective action settlement than when approving attorney's fees in a disputed case). Heeding that admonishment, the Court reluctantly approves the $95,000 in attorney's fees that were agreed to as part of the settlement.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiffs' motion for approval of the FLSA collective action settlement [ECF No. 50] is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE in accordance with the settlement agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 19, 2019         s/Patrick J. Schiltz
                               Patrick J. Schiltz
                               United States District Judge